ALAN SOLOMON ET AL. *v.* WILLIAM C.
GILMORE ET AL.
(AC 16087)

Foti, Spear and Cretella, Js.

Argued November 10, 1997—officially released March 10, 1998

*William C. Gilmore*, pro se, the appellant (named defendant).

*Frank S. Marcucci*, with whom, on the brief, was *Lawrence S. Hillman*, for the appellee (named plaintiff).

*Christopher J. McCarthy*, for the appellee (plaintiff Mary Ellen Tomeo).

*Opinion*

FOTI, J. The defendant, William C. Gilmore,[1] appeals from the judgment of strict foreclosure, rendered following the granting of the motions for summary judgment filed by the plaintiffs, Alan Solomon and Mary Ellen Tomeo. Although the defendant has raised twelve separate issues on appeal,[2] the primary issue to be

[1] In addition to the named defendant, Cheryl A. Gilmore was also a defendant in the underlying foreclosure action; she is not a party to this appeal. We refer in this opinion to William C. Gilmore as the defendant.

[2] The statement of issues in the defendant's brief recites:

"1. Did the court err in allowing the foreclosure to proceed?

"2. Did the court err in granting summary judgment on [the defendants'] special defenses?

"3. Did the court err in granting summary judgment [based on a] bad faith affidavit and misleading arguments?

"4. Did the court err in not addressing the issue that the plaintiffs were in violation of the law?

"5. Did the court err in not addressing the legality of the mortgage, which was made in violation of the law?

"6. Did the court err in exempting the mortgage transaction from usury statutes by not addressing whether this was actually a 'bona fide' mortgage?

addressed is whether the trial court properly granted the plaintiffs' motions for summary judgment. We affirm the judgment of the trial court.

The plaintiffs commenced this action by a complaint alleging that they had loaned the defendants $55,000, which loan was memorialized by a promissory note dated May 30, 1989, and was secured by a second mortgage encumbering property known as 44 Bradford Corner Road in the town of Woodstock. The plaintiffs alleged that the defendants failed to (1) pay monthly installments on the loan after May 5, 1993, (2) keep the property insured and (3) pay property taxes. As a result of these alleged breaches of the mortgage agreement, the plaintiffs accelerated payment of the debt.

The defendants filed an answer denying that any money was owed to the plaintiffs. The defendants also filed seven special defenses[3] and a six count counterclaim.[4]

"7. Did the court err in finding that the plaintiffs did not have a fiduciary duty to the defendants?

"8. Did the court err in finding the only issue of material fact centered on whether the defendants paid all that was owed?

"9. Did the court err in granting bifurcation?

"10. Did the court err in granting strict foreclosure based upon the memorandum of decision [granting, in part, the plaintiffs' motions for] summary judgment?

"11. Did the court err in granting strict foreclosure based upon an illegal mortgage contract?

"12. Did the court err in granting strict foreclosure where the plaintiffs breached the [mortgage] contract?"

[3] By way of special defense, the defendants alleged (1) payment of the obligation, (2) violation of the Truth in Lending Act, 15 U.S.C. § 1601 et seq., (3) breach of a fiduciary duty, (4) reinstatement of the mortgage, (5) usury, (6) breach of an implied covenant of good faith and fair dealing, and (7) violation of General Statutes § 42a-1-203, concerning the obligation to act in good faith with respect to the performance or enforcement of a negotiable instrument.

[4] The defendants' counterclaim parallels the allegations contained in their special defenses and includes a claim that the plaintiffs' conduct violates the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. Pursuant to their counterclaim, the defendants sought, inter alia, (1)

Pursuant to General Statutes § 52-97,[5] the trial court granted a motion to bifurcate the trial. Thereafter, the plaintiffs filed separate motions for summary judgment. Solomon submitted a supplemental affidavit in support of his motion for summary judgment. On April 26, 1996, the trial court, *Sferrazza, J.,* issued a memorandum of decision granting, in part, both plaintiffs' motions. On June 3, 1996, the issues not disposed of by way of summary judgment were tried to the court, *Loiselle, J.,* and a judgment of strict foreclosure was rendered.

As a preliminary matter, we note that the first issue raised by the defendant on appeal is not one that may be properly addressed on its merits. The defendant claims that the trial court improperly allowed the foreclosure action to proceed because the action was brought by Steven Tomeo,[6] who the defendant claims had been his attorney and to whom he had gone for assistance in obtaining the mortgage sought to be foreclosed. The defendant alleges that Tomeo had a conflict of interest because his wife, the plaintiff Mary Ellen Tomeo, and Solomon, who was also an attorney, furnished the mortgage. Steven Tomeo is not a party to this action; therefore, we cannot address any claim alleging his adverse representation or unethical behavior.

rescission of the transaction, (2) termination of the plaintiffs' security interest in the defendants' property, (3) a refund of sums previously paid, (4) termination of the mortgage, (5) a declaratory judgment that the defendants' obligations, pursuant to the note and mortgage, are discharged, (6) actual and punitive damages, and (7) costs and attorney's fees.

[5] General Statutes § 52-97 provides in relevant part: "In any civil action the plaintiff may include in his complaint both legal and equitable rights and causes of action, and demand both legal and equitable remedies . . . . [I]n any case in which several causes of action are joined in the same complaint, or as matter of counterclaim or set-off in the answer, if it appears to the court that they cannot all be conveniently heard together, the court may order a separate trial of any such cause of action or may direct that any one or more of them be expunged from the complaint or answer."

[6] Substituted appearances were subsequently filed on behalf of the plaintiffs, in lieu of those of Tomeo.

The defendant further alleges that the trial court improperly granted summary judgment based on an affidavit submitted in bad faith by one of the plaintiffs for the obvious purpose of misleading the court. The following facts are necessary for the proper disposition of this claim.

On April 1, 1996, Solomon filed a supplemental affidavit in which he stated: "At the time of the making of the loan which is the subject of this foreclosure action, I was exempt from the license requirement of C.G.S. § 36a-511 (formerly § 36-224b) because I granted fewer than five secondary mortgage loans in the twelve consecutive months prior to the making of this loan, and I granted fewer than five secondary mortgage loans in the twelve months following the making of this loan. I did not make any loans in any twelve consecutive months where the aggregate of said loans exceeded $100,000."

General Statutes § 36a-512 provides that the following persons are exempt from the licensing requirements for secondary mortgage lenders: "(5) persons granting five or fewer secondary mortgage loans within any twelve consecutive months, provided (A) the aggregate total of such loans does not exceed one hundred thousand dollars, (B) *each individual loan does not exceed twenty thousand dollars* and (C) such loans are written in compliance with section 36a-521 . . . ." (Emphasis added.) The affidavit of the plaintiff Solomon, who is an attorney, conveniently omitted that part of the statute that excludes him from the exemption from the licensing requirements, i.e., the loan involved exceeded $20,000.

We are aware that "[a]n action of foreclosure is peculiarly equitable and the court may entertain all questions which are necessary to be determined in order that complete justice may be done between the parties." *Hartford*

*Federal Savings & Loan Assn.* v. *Tucker*, 196 Conn. 172, 175, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985). We cannot, however, speculate as to whether the court would have acted differently in the exercise of its equitable powers had a full and accurate supplemental affidavit been filed.

We are bound by the law as applicable to this appeal. We note the standard of review of a trial court decision granting a motion for summary judgment. "Practice Book § 384 mandates that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Mullen* v. *Horton,* 46 Conn. App. 759, 763, 700 A.2d 1377 (1997). "A material fact is a fact that will make a difference in the result of the case." (Internal quotation marks omitted.) *Budris* v. *Allstate Ins. Co.,* 44 Conn. App. 53, 56, 686 A.2d 533 (1996), quoting *Sylvestre* v. *United Services Automobile Assn. Casualty Ins. Co.,* 42 Conn. App. 219, 222, 678 A.2d 1005 (1996), aff'd, 240 Conn. 544, 692 A.2d 1254 (1997). While there exists a genuine issue of fact as to whether the plaintiffs were exempt from the licensing requirements for lenders of secondary mortgage loans, the question remains as to whether this fact is material. In other words, does the fact that the plaintiffs may not have been properly licensed to issue secondary mortgage loans pursuant to § 36a-511[7] transform the transaction into either a nullity or an illegal act so as to relieve the defendants of their obligations under the note and mortgage?

---

[7] General Statutes § 36a-511 (a) provides in relevant part: "No person shall engage in the secondary mortgage loan business in this state as a lender or a broker unless such person has obtained a license under sections 36a-510 to 36a-524, inclusive. For the purposes of said sections, a person shall be deemed to be engaged in the secondary mortgage loan business if such person advertises, causes to be advertised, solicits, offers to make or makes a secondary mortgage loan, either directly or indirectly. . . ."

Our review of the relevant statutes discloses that administrative sanctions and certain civil actions are available for violations of the license requirement statute. See, e.g., General Statutes § 36a-50 (b).[8] The defendant can provide no legal authority to support his claim that noncompliance with the licensing statute precludes a foreclosure action by rendering the loan or the mortgage illegal or unenforceable. Since the absence of a license on the part of the plaintiffs would make no difference in the result of the case, it is not a material fact for purposes of summary judgment. "Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. . . . *Burns* v. *Hartford Hospital*, 192 Conn. 451, 455, 472 A.2d 1257 (1984)." (Internal quotation marks omitted.) *Barrett* v. *Danbury Hospital*, 232 Conn. 242, 255, 654 A.2d 748 (1995).

---

[8] General Statutes § 36a-50 (b) provides: "Whenever it appears to the commissioner that any such person has violated, is violating or is about to violate any such provision, regulation, rule or order, the commissioner may, in the commissioner's discretion and in addition to any other remedy authorized by law: (1) Bring an action in the superior court for the judicial district of Hartford-New Britain to enjoin the acts or practices and to enforce compliance with any such provision, regulation, rule or order. Upon a proper showing, a permanent or temporary injunction, restraining order or writ of mandamus shall be granted and a receiver or conservator may be appointed for such person or such person's assets. The court shall not require the commissioner to post a bond; (2) seek a court order imposing a penalty not to exceed seven thousand five hundred dollars per violation against any such person found to have violated any order issued by the commissioner; or (3) apply to the superior court for the judicial district of Hartford-New Britain for an order of restitution whereby such person shall be ordered to make restitution of any sums shown by the commissioner to have been obtained by such person in violation of any such provision, regulation, rule or order, plus interest at the rate set forth in section 37-3a. Such restitution shall, at the option of the court, be payable to the receiver or conservator appointed pursuant to this subsection, or directly to the person whose assets were obtained in violation of any such provision, regulation, rule or order. Whenever the commissioner prevails in any action brought under this subsection, the court may allow to the state its costs."

We have thoroughly reviewed the record and briefs as to the defendant's other claims and have considered the oral arguments made by the defendant. We find these claims to be without merit.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion SPEAR, J., concurred.

CRETELLA, J., dissenting. I must dissent from the majority on one determinative issue. In my opinion, the plaintiffs were not entitled to a judgment of strict foreclosure as a matter of law. I agree that there were no material issues of fact in dispute. Furthermore, there was no dispute, material or not, that the plaintiffs were not exempt from the licensing requirements of General Statutes § 36a-511 since the loan of $55,000 exceeded $20,000 and thus required that the plaintiffs, as second mortgage lenders, be licensed. The issue of law to be determined is whether a second mortgage may be foreclosed when the mortgagee has violated § 36a-511.

In deciding the plaintiffs' motions for summary judgment, the trial court considered each count of the complaint and each count of the special defenses. In its discussion of the defendants' third special defense, the court discussed only that portion of it relating to the issue of agency and the fiduciary relationship of attorney Steven Tomeo. The court ignored and did not rule on the allegations of paragraphs twelve and thirteen of the third special defense, which alleged that the plaintiffs were not licensed to give second mortgages. General Statutes § 36a-511 (formerly General Statutes § 36-224b). Appellate review of a matter of law is de novo, and we may therefore consider the plaintiffs' lack of a license as raised in the third special defense. See *Squeglia* v. *Squeglia*, 234 Conn. 259, 263, 661 A.2d 1007 (1995); *Andover Ltd. Partnership I* v. *Board of Tax Review*, 232 Conn. 392, 396, 655 A.2d 759 (1995). It is on the

licensing violation that I base my dissent. If the lack of a license rendered the second mortgage unenforceable as a matter of law, summary judgment in favor of the plaintiffs cannot be affirmed.

The license issue was raised again on appeal, with the defendants arguing that the plaintiff's failure to be licensed rendered the mortgage unenforceable. The majority opinion concludes that the plaintiffs' mortgage is good and enforceable and that there exists no authority to support the claim of the defendants that any foreclosure is precluded. The majority states that the *loan* is not illegal or unenforceable and with that statement I agree.[1] It is not the loan that is illegal or unenforceable, but rather the security for that loan, which the plaintiffs hold as second mortgagees.

The licensing provisions of § 36a-511 were established by the legislature to protect the public. The statute carries no remedy on its face that provides for the unenforceability of a second mortgage that is received by an unlicensed mortgagee, although there are possible sanctions and penalties that might be enforced against the mortgagee, Alan Solomon, an attorney. His actions, and more specifically, his erroneous affidavit alleging exemption from the license requirements of General Statutes § 36a-512 might be the subject of a grievance committee action or the insurance commissioner might take action against both mortgagees pursuant to General Statutes § 36a-50 (3) (b). Such issues are not before us in this appeal.

This case is most like *DiBiase* v. *Garnsey*, 103 Conn. 21, 130 A. 81 (1925). In that case, a statute required that any car repair bill over $50 be the subject of written authority to make the repairs, the penalty for violation

---

[1] It may well be that the plaintiffs have a cause of action to allow suit on the note. That is not before us here.

being a fine against the repairman. The statute in *DiBiase* made no mention as to whether an oral contract for repairs could be enforced. The court held, nevertheless, that when a contract violates a statute the contract itself may become void even where the statute does not so provide. Id., 26–28. This case and its holding were approvingly cited in *Barrett Builders* v. *Miller*, 215 Conn. 316, 324, 576 A.2d 455 (1990). "Connecticut law has long recognized that restitution is not available for performance rendered pursuant to a contract that is unenforceable on public policy grounds." Id., 323–24. When a court finds that an express public policy has been violated, it must take such steps as are available to provide protection and relief to the public. Not to do so in this case would mean that the court would thwart the legislative purposes of § 36a-511.

Accordingly, I would set aside the judgment of foreclosure.